AgNes, A.J.
This is a civil action to determine the order of priority to surplus funds resulting from a foreclosure auction sale.[3] Defendant, Dewitt Davenport, Trustee of Route 28 Realty (“Davenport”) and co-Defendant, The United States of America (“United States”) who have been interpleaded in the case have filed cross motions for summary judgment.
FACTS
The essential facts are not in dispute. On November 4, 2003, Citibank, N.A., as Trustee, foreclosed on the first mortgage to 14 Puddingstone Lane, Mendon, Massachusetts. Davenport’s Memo, p. 1. After satisfaction of the debt to Citibank, a resulting surplus existed to which several parties asserted claims. Davenport’s interest in the surplus emerges from five equipment leases it holds signed by defendants Janet Leahy and Timothy M. Baye.[4] See Davenport's Memo, p. 2. The United States’ interest in the surplus emerges from delinquent employment taxes assessed against the property owners. See United States’ Memo, p. 3. The result of this motion rests upon which party’s interest, Davenport’s or the United States’, takes priority to the surplus funds. Davenport recorded a writ of attachment to the property on May 1, 2003, and a judgment was entered in Davenport’s favor on October 6, 2003. See Davenport’s Memo, p. 2. The tax lien arose on August 25, 2003, and the United States perfected that interest on January 14, 2004.[5] See United States’ Memo, p. 3.
DISCUSSION
Federal law governs the priority of federal tax liens. Federal law generally follows the common-law principle of “first in time, first in right.” See United States v. Equitable Life Assurance Society of the United States, 384 U.S. 323, 330 (1996); United States v. City of New Britain, 347 U.S. 81, 87-88 (1954). The common-law principle is modified by the Internal Revenue Code *220 (IRC) §6323 which specifies the priority of federal tax liens with respect to state-created interests. See Davenport’s Memo, p. 6. “The lien imposed by Section 6321 (tax lien] shall not be valid as against any purchaser, holder of a security interest, mechanic’s lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.” 26 U.S.C. §6323 (emphasis added). The United States properly perfected its tax lien on January 14, 2004. See supra note 5. In order to establish priority over the United States, Davenport must demonstrate it was a “judgment lien creditor” prior Januaiy 14, 2004. See Smith Barney, Harris Upham & Co., Inc., v. Connolly, 887 F.Sup. 337, 342 (D.Mass. 1994).
A “judgment lien creditor” is “a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for recovery of specifically designated property or a certain sum of money.” Smith Barney, supra, 887 F.Sup. at 342-43, quoting Treas.Reg. §301.6323(h)-1(¿ (1976). Ultimately federal law governs when a lien has acquired perfected status capable of defeating later federal tax liens. See United States v. Pioneer American Insurance Company, 374 U.S. 84, 88 (1963). “Choate state-created liens take priority over later federal tax liens . .. The federal rule is that liens are perfected — in the sense that there is nothing more to be done to have a choate lien — when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.” See id. at 88, 89 (internal quotations omitted). Compare, P.G.R. Management Company, Inc. v. Credle, 427 Mass. 636, 640 (1998) (inchoate lien for attorneys fees under G.L.c. 221, §50 matures upon entry of a judgment in the case). In order to qualify as a “judgment lien creditor,” the lien holder must “perfect!) a lien under the judgment on the property involved according to local law . . Smith Barney, supra, 887 F.Sup. at 343, quoting Treas.Reg. §301.6323(h)-l(g) (1976).
In Smith Barney, supra, the United States District Court correctly recognized that in a dispute between the United States and a private party who had obtained a California judgment over the priority of competing liens for surplus Massachusetts funds held by a brokerage house, the local law to be applied was that of Massachusetts. The court then reasoned that G.L.c. 235, §14 (a Massachusetts judgment is required in order to execute on a foreign judgment) required a party with an out-of-state judgment to first obtain a Massachusetts judgment in order to have an enforceable judgment and thus achieve the status of a judgment lien creditor. Id. at 344-45. Moreover, because the private party in Smith Barney had not obtained an attachment under Massachusetts law before transforming her California judgment into a Massachusetts judgment, the private party could not benefit from the so-called “relation back” doctrine (despite the fact that the private party had obtained an injunction in Massachusetts based on the California judgment), and her lien was not perfected until she obtained an execution and recorded it in the appropriate Massachusetts Registry of Deeds. Id. at 345-46. See also United States v. Security Trust and Savings Bank of San Diego, 340 U.S. 47, 49-50 (1950) (rejecting the contention that “relation back” doctrine would result in the priority of a state court judgment obtained after the perfection of a federal tax lien on the basis of a pre-existing writ of attachment secured in the same state court case). Under this analysis, the Smith Barney court properly reasoned that the tax lien of the United States was first in time compared to the date of the recording of the execution on the Massachusetts judgment obtained by the private party.
It is a mistake, however, to read the Smith Barney case as requiring that every Massachusetts judgment creditor must obtain a writ of execution in order to achieve the status of a judgment lien creditor for purposes of priority against a federal tax lien. Since Davenport recorded a writ of attachment on May 1, 2003, prior to the foreclosure of the real property, and obtained a judgment on October 6, 2003, also prior to the foreclosure, it established a known lien, the property subject to the lien and the amount of the lien as required by federal law all prior to the foreclosure sale.
It does not appear that there is an appellate case which addresses the precise situation in this case where a Massachusetts creditor obtains and records a writ of attachment and subsequently obtains a judgment prior to the perfection of the federal tax lien, but does not execute on the judgment.[6] However, Smola v. Camara, 16 Mass.App.Ct. 908 (1983) (re-script), is instructive. There, the Appeals Court indicated that a Massachusetts creditor became a judgment lien creditor under federal law as a result of obtaining a Massachusetts judgment. There is nothing in Massachusetts law which operates to extinguish Davenport’s status as a judgment lien creditor because he has not obtained an execution. At one time, Massachusetts law provided that a prejudgment attachment did not survive a judgment unless an execution was recorded within 40 days of judgment and there was a levy within 30 days of said execution. See McGrath v. Worcester National Bank, 3 Mass.App.Ct. 599, 600-01 (1975) (explaining that G.L.c. 236, §4 and G.L.c. 223, §59, prior to the most recent amendments, required a judgment creditor who had secured an attachment to obtain and record a writ of execution in order to preserve its lien). Contrast, St Mary’s Credit Union v. Mavretic, 1999 Mass.App.Div. 159 (Mass.App.Div. 1999) (explaining that changes in G.L.c. 236, §4 and G.L.c. 223, §59 no longer cause an attachment to expire). The current version of G.L.c. 223, §59 provides that “(u]pon judgment for the plaintiff in a civil action, property which has been attached in connection with said action shall remain subject to attachment for thirty days after the day which appears on the execution . . .” (emphasis added). The record does not indicate that Davenport obtained a writ of *221 execution concerning the October 6 judgment.[7] Davenport remains, however, a “judgment lien creditor” under federal law, so Davenport’s lien is first in time as compared to the United States’ tax lien which was perfected after Davenport’s favorable judgment.[8] Cf. St. Mary’s Credit Union v. Mavretic, 1999 Mass.App.Div. 159 (Mass.App.Div. 1999). See also The Hartford Provision Company v. United States, 1977 WL. 1203 *2 (D.Conn. 1977).
ORDER
For the foregoing reasons, it is hereby ORDERED that Davenport’s motion for summary judgment is ALLOWED and the United States’ motion for summary judgment is DENIED. Accordingly, the interpleader funds are to be disbursed until the judgment obtained by Davenport in the amount of $33,425.77 is satisfied and any remaining interpleader funds are to be disbursed to the United States.

Nlie plaintiff, Citibank, N.A. foreclosed on a mortgage on property in Mendon, Massachusetts. The mortgage was given by Defendants Janet Leahy (Baye) and Timothy Baye. See Dewitt Davenports Memorandum, p. 1.

Nimothy M. Baye and Janet Leahy (Baye) gave the first mortgage on the property in Mendon, Massachusetts. See supra note 3.

A federal tax lien is perfected when a Notice of Federal Tax Lien is filed in a state office, as designated by the State laws, in which the property subject to the lien is located. See 26 U.S.C. §2623(f)(l)(A)(ii). If the State does not designate an office in which to file the notice, the tax lien shall be filed in the office of the Clerk for the United States District Court for the judicial district where the property subject to the lien is located. See 26 U.S.C. §6323 (f)(1)(B). Massachusetts does not designate an office for filing federal tax liens. See SSG, Inc. v. Omni Medical Health & Welfare Trust, 1993 WL 160595 (D.Mass. 1993). The United States filed a Notice of Federal Tax Lien in the United States District Court on January 14, 2003. See United States' Memo, p. 3.

“Prejudgment attachment is a procedure whereby real estate, goods and chattels or other property may be held as security to satisfy a possible judgment for damages . . .” Perlin, Marc, G. & Conners, John M., Handbook of Civil Procedure in the Massachusetts District Court, 3rd ed., p. 132 (2003). “[T]he entry of judgment by the clerk . . . makes the judgment effective." Id. at 297. Judgment becomes effective when the clerk prepares and signs the judgment on a “separate document" and enters judgment on the docket. Id. An execution is “a process issued from the court in which a judgment has been rendered, in a civil action, for the purpose of carrying the judgment into effect.” Id. at 324. Levy is the process of delivering an execution to an officer for the purpose of making a demand for or seizing the defendant’s property. See id. at 328.

Massachusetts General Law chapter 36, §4 is another statute often cited in interpleader cases. The statute is inapplicable in this case, because it deals with the effect of attachment on the execution process. (Emphasis added.)

Davenport’s Interest is not made “inchoate” under Massachusetts law by statutes pertaining to execution and levy since Davenport has not executed the judgment. While Davenport’s writ of attachment became a perfected judgment lien upon judgment, the risk is that Davenport’s writ of attachment is only valid for six years unexecuted. See Perlin, Marc, G. & Conners, John M., Handbook of Civil Procedure in the Massachusetts District Court, 3rd ed., p. 149 (2003) (“Under G.L.c, 223 §114A, an attachment of real estate expires by operation of law at the end of six years from the ’date of filing’ in the Registry of Deeds, unless the Register within that period, upon written request of the plaintiff or plaintiffs attorney, brings forward the attachment in the record books”).